SIGROL REALTY CORP., Respondent, *v.* RAYMOND J. VALCICH et al., Appellants, et al., Defendants.

Second Department, March 13, 1961.

*Spencer H. Gaines* and *Herbert Ginsburg* for appellants.

*Reuben E. Gross* and *J. Harry Tiernan* for respondent.

BELDOCK, J.  In 1891, six members of the Wilmore family acquired the tract of water-front land in Richmond County involved in this action, known as " Robinson's Beach ".  During the Wilmore ownership seven frame bungalows were placed on

the land by various tenants who rented the land space from the landowners for that purpose. The tenants paid rent for the use of the land; they paid for the maintenance and insurance of the bungalows; and from time to time they repaired, altered and sold the bungalows without let or hindrance from the landowners. The tenants occupied the bungalows during the Summer months only.

The bungalows rested on cinder blocks which were not sunk into the ground; the bungalows were not bolted to the ground; and they had no basements. It is not disputed that, upon, severance of the water and electrical connections, the bungalows were so constructed that they could be removed without injury either to them or to the land.

Some of the tenants who originally erected the bungalows sold them without requesting or obtaining permission from the Wilmores, the landowners. The seven defendants, either as the original tenants or as their assignees, assert their ownership of the bungalows.

On April 9, 1959, the Wilmores, for the sum of $12,250, contracted to sell to the plaintiff the land acquired by them in 1891, with the buildings and improvements thereon, *subject to the rights of tenants, if any.* The contract contained the printed provision that fixtures and articles of personal property attached or appurtenant to the premises "are represented to be owned by the seller, free from all liens and encumbrances". This provision was amended, however, to read that the seller merely represented that all such fixtures and articles of personal property "which are owned by the seller, are free from all liens and encumbrances". On June 11, 1959, the Wilmores executed and delivered a deed in accordance with the contract.

On September 25, 1959, the plaintiff, as landlord, obtained against defendants a final order in a summary proceeding awarding plaintiff possession of the land here involved by reason of the expiration of defendants' term, with a stay to defendants for the removal of their personal property.

When defendants attempted to remove the bungalows, plaintiff, on October 6, 1959, instituted this action to declare that it has title to the bungalows and to restrain defendants from removing them. On October 30, 1959, plaintiff obtained a temporary injunction against such removal. After trial in February, 1960, the court held in favor of plaintiff and made the injunction permanent, on the theory: (1) that the bungalows on the land had the attributes of realty; (2) that the delivery of the deed by the Wilmores to plaintiff carried with it title to the bungalows on the land unless there was an agreement

between the Wilmores and defendants pursuant to which defendants' ownership of the bungalows and their right to remove them were recognized; and (3) that defendants failed to prove such an agreement.

For the purpose of determining whether chattels annexed to realty remain personalty or become realty, chattels are divided into three classes: (1) some chattels, such as gas ranges, because of their character as movables, remain personalty even after their annexation, regardless of any agreement between the chattel owner and the landowner (*Central Union Gas Co.* v. *Browning*, 210 N. Y. 10); (2) other chattels, such as brick, stone and plaster placed in the walls of a building, become realty after annexation, regardless of any agreement to the contrary between the chattel owner and the landowner; such personal property does not retain its character as such if it be annexed to the realty in such manner as to become an integral part of the realty and be immovable without practically destroying the personal property, or if all or a part of it be essential to the support of the structure to which it is attached (*East New York El. Co.* v. *Petmaland Realty Co.*, 243 N. Y. 477); and (3) still other chattels, after attachment, continue to be personalty or become realty, in accordance with the agreement between the chattel owner and the landowner (*Madfes* v. *Beverly Development Corp.*, 251 N. Y. 12, 15).

In my opinion, these bungalows were in the third class, i.e., they were movables which continued to be personalty or became realty, depending on the agreement between the bungalow owners and the landowners, the Wilmores. There is no contention by plaintiff that the Wilmores ever claimed ownership of the bungalows during their long ownership of the land after the bungalows were placed thereon. The bungalows were erected by defendants or by their predecessors in title without any intention of making them permanent accessions to the realty. The manner of their annexation was such as to make them easily removable without injury either to them or to the land. Defendants and their predecessors in title were tenants of land space only. They repaired, maintained, insured, altered, and sold the bungalows without the consent or interference by the Wilmores.

The fair inference to be drawn from the evidence is that the agreement between the Wilmores and the original owners and the latters' vendees, was that the bungalows were to remain personalty; that the lessees of the land space, at the expiration of the term, would have the right to remove the bungalows as

their own personal property; and that the landowner would have no right to prevent them from making such removal (cf. *Ombony* v. *Jones,* 19 N. Y. 234, 239, 243).

Whether title to the bungalows passed to plaintiff and whether they may be removed by defendants as personalty, depends upon whether defendants abandoned the bungalows to plaintiff. There would have been such an abandonment and a consequent loss of the right to remove the bungalows if defendants had failed to remove them before the expiration of an old lease and if defendants had accepted a new lease of the premises, including the bungalows, without making any reservation or mention of them (*Talbot* v. *Cruger,* 151 N. Y. 117; *Loughran* v. *Ross,* 45 N. Y. 792). But where, as here, there was no new lease and defendants remained merely in possession after the term of the old lease expired, the right to remove the bungalows continued since defendants are still in possession by virtue of the old lease (*Lewis* v. *Ocean Navigation & Pier Co.,* 125 N. Y. 341, 350–351).

This plaintiff is not a purchaser for value without notice. It does not claim that the Wilmores ever represented to it, either orally or in writing, that they owned the seven bungalows in question. Only the fixtures and articles of personalty *owned by the Wilmores* were sold. The contract of sale expressly negatived any representation by the Wilmores that they did own the fixtures and articles of personalty. Under the contract the Wilmores sold and the plaintiff purchased the land subject to the rights of the defendants.

The judgment in favor of plaintiff should, therefore, be reversed and judgment should be directed in favor of defendants.

NOLAN, P. J., CHRIST, PETTE and BRENNAN, JJ., concur.

Judgment in favor of plaintiff, insofar as appealed from, reversed on the law and the facts, with costs, and judgment directed in favor of defendants, with costs.

Formal findings of fact inconsistent herewith are reversed; formal conclusions of law inconsistent herewith are disapproved; and new findings and conclusions consistent herewith will be made upon the settlement of the order to be entered hereon.

Settle order on consent or on 10 days' notice; such order to enumerate the findings reversed and the conclusions disapproved, and to set forth appropriate new findings and conclusions in accordance with this opinion.